IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 12, 2015

## STATE OF TENNESSEE v. BOBBY JOE CAMPBELL

**Appeal from the Circuit Court for Marshall County**
**No. 13CR108     Lee Russell, Judge**

---

**No. M2015-00704-CCA-R3-CD – Filed February 23, 2016**

---

The Defendant, Bobby Joe Campbell, entered guilty pleas to two counts of aggravated assault, a Class C felony, and two counts of failure to appear, a Class E felony, with the manner and service of his sentence to be determined by the trial court. See T.C.A. §§ 39-13-102, -13-111, -16-609(e). The trial court merged the aggravated assault convictions and imposed a consecutive term of five years' incarceration for aggravated assault and one and a half years' incarceration for each count of failure to appear. Each count of failure to appear was also ordered to be served consecutively to the other for an effective sentence of eight years in the Tennessee Department of Correction. The sole issue presented in this appeal is whether the Defendant's sentence is excessive and contrary to law. Upon our review, we must remand this matter to the trial court for a new sentencing hearing for the limited purpose of considering the factors outlined in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995), and determining the propriety of consecutive sentencing for the failure to appear convictions. In all other respects, we affirm the sentence imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed in Part and Remanded for Resentencing**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ROBERT L. HOLLOWAY, JR., JJ., joined.

M. Wesley Hall, IV, Unionville, Tennessee, for the Defendant-Appellant, Bobby Joe Campbell.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Robert J. Carter, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Defendant and the victim, Cindy Mooneyham, were romantically involved and on December 27, 2012, they were in a physical altercation in Marshall County, Tennessee. As a result, on June 19, 2013, the Defendant was indicted for one count of aggravated assault by attempting to cause bodily injury by strangulation and one count of aggravated assault by causing serious bodily harm (Case No. 13-CR-108). While the Defendant was on bond, he failed to appear in court on December 13, 2013, and at his scheduled trial on January 21, 2015, which resulted in two additional charges for failure to appear (Case Nos. 14-CR-1, 14-CR-2). The Defendant entered guilty pleas to all four charges on January 22, 2015, leaving the manner and service of his sentence to be determined by the trial court. At the plea hearing, the State summarized the facts surrounding the offenses as follows:

> [Case No.] 13-CR-108 is a two-count indictment, Count 1, aggravated assault by strangulation; Count 2, aggravated assault with serious bodily injury. The facts are these that on the date here in Marshall County, Tennessee, December 27th, 2012, officers responded to an apartment complex here in the city about an altercation that had taken place between [the Defendant] and Ms. Mooneyham, who had a relationship. I would describe it in old talk, a girlfriend type relationship.
>
> . . . .
>
> The defendant was spoken to by law enforcement first. His statement in short form was basically that Ms. Mooneyham got physical, struck him under the eye. However, the officer would testify, if he was allowed to, that he saw a mark under the defendant's eye and he did not believe it was consistent with what the defendant described. Then, Ms. Mooneyham was spoken to. She stated that Mr. Campbell had awoken her, wanted to have certain intentions. She did [not] want to. He then struck her in the jaw with his fist, picked her up, slammed her into the wall. Then, he began to choke her with his hands to the point where she was having trouble breathing. The officers looked at her. They saw marks, saw swelling, I think, on the left side of her face. If my memory is correct, it was consistent with what she said. Then, they saw red marks on her throat, which was consistent with what they said. We have photographs of all that. And after the incident was over, Mr. Campbell had been taken into custody. At some point, she went to the hospital, had X-rays, and her jaw was broken.

And [Case No.] 14-CR-101. These charges were pending on [the Defendant], and we had court here in circuit court. You were the judge. December 13th, 2013, the defendant failed to show for that court appearance, and we later took out charges on him for failure to appear, and he was on bond.

And, then, in [Case No.] 14-CR-2, on January 21st here in Marshall County, Tennessee, the [D]efendant had another appearance, and while still on bond, he failed to appear for that appearance and charges were taken out. That's short form.

The trial court accepted the Defendant's guilty pleas and set the matter for sentencing.

**Sentencing Hearing.** At the March 13, 2015 sentencing hearing, the trial court merged the Defendant's aggravated assault convictions. The Defendant's presentence report was introduced without objection. The Defendant's criminal history included convictions for simple assault in August 2002 and possession of a handgun while under the influence in December 2007. The parties agreed that the Defendant was a Range I, standard offender and that the applicable sentence ranges were three to six years at thirty percent for aggravated assault and one to two years at thirty percent for failure to appear.

The victim testified that she had been seeing the Defendant romantically for nine months prior to the assault. The victim suffered from physical disabilities and had been using a walker for five or six years. She explained that she had developed zinc poisoning from using denture cream and that, due to this ailment, she had difficulty walking and picking up things and could not drive. She also said that because of her physical condition, she had difficulty fighting the Defendant off during the assault.

The victim testified that on the night of the assault, the Defendant was upset about a telephone call with his ex-wife, and she felt like he took his anger out on her. She said that she was asleep at her apartment when the conflict arose. She stated that the Defendant strangled her to the point where she could not breathe and hit her with his "horseshoe diamond ring," which fractured her jaw. She sought immediate medical attention at the emergency room. The next morning, she was sent to Vanderbilt Hospital where she was told that her jaw would "heal up on its own, because the break . . . was too close to [her] facial nerve to have surgery done on it." It took six to seven months for her jaw to heal, and she was limited to a liquid diet during that time. She also identified a photograph taken after the assault that showed bruising under her chin and around her mouth.

On cross-examination, the victim testified that she had been arrested once for violating probation. She also admitted that her prior, fifteen-year relationship involved instances of violence and physical confrontations. However, she claimed that these incidents had occurred several years ago and no longer affected her emotionally. She denied that she ever threw whiskey bottles at the Defendant or that she ever struck him other than during the assault. She also stated that she was bipolar but did not take medication for it. She admitted that on the night she was assaulted, she had two shots of alcohol at about 8:30 p.m. and had taken a Tylenol Cold pill earlier that afternoon. Although she knew the medicine should not be taken with alcohol, she said that she took it anyway because she had not slept in three days. She said that she went to bed around 9:00 p.m. and had been asleep around three hours before the assault occurred. She agreed that she had previously attended Spectrum Pain Clinic, where she received medication and shots for back pain. However, she stated that the last time she had taken pain medication was in 2004. The victim also testified that she had never fallen or had difficulty while getting up during the night to use the rest room.

The trial court questioned the victim briefly regarding the nature and extent of her physical disabilities. She noted that she had trouble raising her hands due to the zinc poisoning and agreed that her physical condition was the same as at the time of the assault.

Dr. Jon Garrison, a clinical psychologist and forensic evaluator, testified that his job duties generally consisted of assessing the mental competency and capacity of criminal defendants. Dr. Garrison conducted a forensic evaluation of the Defendant on August 29, 2014, and his report was introduced into evidence. He testified that he used the police report, the Defendant's and victim's statements, and two tests, a competency test and the Miller Forensic Assessment of Symptoms Test, to conduct the evaluation. The "MENTAL STATUS/BEHAVIORAL OBSERVATIONS" section of Dr. Garrison's report read, in pertinent part, as follows:

> [The Defendant] was dressed in correctional institution attire including shackles, and he gave the appearance of being cooperative with interview and testing procedures. Speech was within normal limits in regard to rate and volume, and vocabulary suggested low average to average intelligence. His mood was dysphoric and affect was congruent. He denied suicidal/homicidal ideation. The defendant was oriented to person, place, purpose and time. There was no evidence of a formal thought disorder, and though he claimed a history of psychosis, malingering testing undercut this assertion. The defendant acknowledged a history of alcohol or drug problems. Memory was within normal limits. History suggests judgment

and impulse control has often been poor. Concentration was adequate during the interview.

In his evaluation of the Defendant, Dr. Garrison noted that the Defendant had a history of mental issues and diagnoses that included major depression, polysubstance abuse, noncompliance with treatment, paranoid schizophrenia, and anxiety disorder. The Defendant reported having medical issues including "cirrhosis of the liver, an unspecified seizure disorder, hypertension, cerebral atrophy, arthritis, and degenerative disc issues." The Defendant further acknowledged a history of illegal drug and alcohol abuse and "admitted he was 'drinking heavily. . . guzzling' whiskey the night of the incident that resulted in current charges[.]"

On cross-examination, Dr. Garrison clarified that he had not made a specific finding of diminished capacity but advised defense counsel that there was a basis for arguing diminished capacity in light of the Defendant's alcoholism. He noted, however, that the basis for this argument was predicated upon the Defendant's own self-reporting as to his mental condition and that the victim's statement did not confirm the Defendant's claims.

Kimberly Goney, an officer of the Tennessee Probation and Parole Department, testified that she had prepared the Defendant's presentence report. She said that she was not qualified to investigate mitigating factors and did not include any in the presentence report. She said that the Defendant "self-reported . . . that he was mentally and physically disabled" and "began receiving disability in 1997 for . . . [cirrhosis] of the liver and paranoid schizophrenia." She agreed that the Defendant made a statement in the report that read, "I'm real sorry. I can't say that enough."

Following arguments of counsel, the trial court enhanced the Defendant's sentence based on factors (1), that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, and (4), that a victim of the offense was particularly vulnerable because of age or physical or mental disability. T.C.A. § 40-35-114(1), (4). The trial court declined to apply any mitigation factors, and imposed a sentence of five years for aggravated assault and a one year and six months sentence for each count of failure to appear. The court noted that there was a statutory mandate requiring the failure to appear sentences to run consecutive to the aggravated assault sentence. See T.C.A. § 39-16-609(f). The court ordered the two failure to appear sentences to be served consecutively to each other after classifying the Defendant as a dangerous offender. See T.C.A. § 40-35-115(b)(4). As a result, the trial court imposed an effective sentence of eight years' incarceration with thirty percent release eligibility to be served in the Tennessee Department of Correction. This timely appeal followed.

# ANALYSIS

The Defendant argues that the trial court erred by imposing a sentence that is "excessive and contrary to law." He also contends that he is entitled to a mitigated or alternative sentence based upon the sentencing principles and the record as a whole. The State responds that the trial court properly exercised its discretion in sentencing the Defendant. We agree.

The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing." State v. Bise, 380 S.W.3d 682, 708 (Tenn. 2012). In light of this broader discretion, "sentences should be upheld so long as the statutory purposes and principles, along with any applicable enhancement and mitigating factors, have been properly addressed." Id. at 706. Moreover, "a trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." Id. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld." Id. Therefore, this court reviews a trial court's sentencing determinations under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. The defendant has the burden of showing the impropriety of the sentence on appeal. T.C.A. § 40-35-401(d), Sentencing Comm'n Cmts.

A trial court must consider the following when determining a defendant's specific sentence and the appropriate combination of sentencing alternatives: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Id. § 40-35-210(b)(1)-(7). In addition, "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alternative or length of a term to be imposed." Id. § 40-35-103(5). The court must impose a sentence "no greater than that deserved for the offense committed" and "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Id. §§ 40-35-103(2), (4).

Any sentence that does not involve complete confinement is an alternative sentence. See generally State v. Fields, 40 S.W.3d 435 (Tenn. 2001). Tennessee Code Annotated section 40-35-102(6)(A) states that a defendant who does not require confinement under subsection (5) and "who is an especially mitigated or standard offender convicted of a Class C, D or E felony, should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary[.]" However, a trial court "shall consider, but is not bound by, the advisory sentencing guideline" in section 40-35-102(6)(A). Id. § 40-35-102(6)(D). In determining whether to deny alternative sentencing and impose a sentence of total confinement, the trial court should consider whether:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Id. § 40-35-103(1)(A)-(C); see State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). Tennessee Code Annotated section 40-35-102(5) gives courts guidance regarding the types of defendants who should be required to serve their sentences in confinement:

> In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration[.]

We note that a trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). "A defendant's sentence is based on 'the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background.'" State v. Trotter, 201 S.W.3d 651, 653 (Tenn. 2006) (quoting Ashby, 823 S.W.2d at 168). The seriousness of the offense alone may justify a trial court's denial of alternative sentencing. See Trotter, 201 S.W.3d at 655. Following the 2005 amendments to the Sentencing Act, a defendant is no longer entitled to a

presumption that he or she is a favorable candidate for alternative sentencing. State v. Carter, 254 S.W.3d 335, 347 (Tenn. 2008).

Here, the Defendant was eligible for probation because each sentence was ten years or less and because the offenses were not specifically excluded by statute. See T.C.A. § 40-35-303(a); State v. Langston, 708 S.W.2d 830, 832-33 (Tenn. 1986) (concluding that a defendant is eligible for probation if each of the sentences is ten years or less regardless of the effective sentence). However, an eligible defendant "is not automatically entitled to probation as a matter of law." Id. § 40-35-303(b), Sentencing Comm'n Cmts. Although the trial court shall automatically consider probation as a sentencing alternative for eligible defendants, the defendant bears the burden of proving his or her suitability for probation. Id. § 40-35-303(b). The defendant must demonstrate that probation would serve "the ends of justice and the best interests of both the public and the defendant." State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (citations omitted). When considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public. State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978)). "[A] trial court's decision to grant or deny probation will not be invalidated unless the trial court wholly departed from the relevant statutory considerations in reaching its determination." State v. Sihapanya, — S.W.3d — , No. W2012-00716-SC-R11-CD, 2014 WL 2466054, at *3 (Tenn. 2014).

As a Range I, standard offender convicted of aggravated assault, a Class C felony, the Defendant was subject to a sentence range of three to six years. For his convictions for failure to appear, a Class E felony, he was subject to a sentence range of one to two years. Thus, the sentences imposed by the trial court were within the appropriate statutory ranges. In determining the appropriate length of the Defendant's sentences, the trial court applied two enhancement factors. The record supports the trial court's application of factor (1), as the Defendant's presentence report lists two prior convictions and an extensive history of drug and alcohol abuse. The Defendant does not dispute his criminal history or history of ongoing substance abuse. Furthermore, the record supports the trial court's application of factor (4), that the victim of the offense was particularly vulnerable because of age or physical or mental disability. Here, the victim testified to the nature and extent of her physical disabilities, noting that at the time of the assault, she was using a walker and had difficulty raising her arms. The trial court was particularly troubled by the severity of the victim's physical vulnerability, emphasizing:

The victim . . . is physically in bad shape. And has every reason to believe that based on this exposure to zinc, that she was at the time of this incident, which is what we [are] concerned about here, she was particularly vulnerable due to her physical condition.

We also know she had a mental condition diagnosed as bi-polar. But the physical is so readily apparent here today. And the reason I asked her to separate out what she thought was nerves, with what I was seeing was she was [not] even able to stand up initially, and get out of her chair.

And then she could not raise her hands -- her right hand to respond to the oath. She responded, but without raising her hand.

. . . .

[H]er difficulty in walking, her inability to raise her hands, appear to me to be as a result of the health problem with the zinc. And I think that [is] consistent with everything she said, consistent with all of the evidence in this particular record.

Although the Defendant asserts that the "punishment imposed does not fit the crime or the offender," we conclude that the record supports the trial court's application of enhancement factors (1) and (4).

The Defendant also argues that the trial court failed to apply any of the mitigating factors raised at sentencing given the Defendant's "history of substance abuse, major depression, and paranoid schizophrenia." In declining to mitigate the Defendant's sentences on mental health grounds, the trial court reasoned that any potential mental impairment suffered by the Defendant was "contributed to very heavily . . . by his substance abuse." The trial court recognized that voluntary intoxication is an exception to mitigation based on mental condition. See T.C.A. § 40-35-113(8). Furthermore, while Dr. Garrison testified that diminished capacity based on the Defendant's alcoholism could be argued, Dr. Garrison fell short of concluding that the Defendant suffered from diminished capacity. The record supports the length of the sentences imposed by the trial court, and the Defendant is not entitled to relief on this issue.

Next, the Defendant argues his current sentence "fails to take into account the trial court's duty to consider the economic impact of the sentence as a fiduciary of the State." The Defendant cites State v. Ashby, 823 S.W.2d 166 (Tenn. 1991) for the proposition that "[g]iven the great need to preserve the State's limited resources, the minimum sentence available under the law is sufficient to ensure all of the interests of the

Sentencing Reform Act are met." In light of these assertions, the Defendant claims that he should have received some type of alternative sentence. According to the Defendant, "the Court should have sentenced the defendant to a substantially reduced sentence and/or ordered some sort of split confinement requiring drug treatment and rehabilitation" based on the sentencing principles and record as a whole.

As an initial matter, we note that the Defendant did not request alternative sentencing or present proof in support of his suitability for alternative sentencing at the sentencing hearing. Notwithstanding this omission, the Defendant fails to demonstrate that the trial court abused its discretion in sentencing him to confinement. In reaching its sentencing decision, the trial court expressly considered the factors in Tennessee Code Annotated section 40-35-210 and the sentencing principles in Tennessee Code Annotated sections 40-35-102 and -103. The trial court was particularly concerned with the nature and seriousness of the Defendant's aggravated assault in light of the victim's physical disabilities. See T.C.A. § 40-35-103(1)(B). The trial court thoroughly considered the Defendant's substance abuse issues and determined that incarceration was appropriate given the victim's frailty at the time of the assault. Furthermore, the Defendant's suitability for alternative sentencing is belied by the fact that he failed to appear in two separate court proceedings related to the aggravated assault offense. Because the record reveals that the trial court carefully considered the evidence, the enhancement and mitigating factors, and the principles of sentencing prior to imposing a sentence of confinement, we conclude that the Defendant was not entitled to an alternative sentence.

Lastly, while the Defendant does not explicitly challenge the trial court's imposition of consecutive failure to appear sentences, this Court is compelled to address the issue. Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a). The Tennessee Supreme Court has held, "[T]he abuse of discretion standard, accompanied by a presumption of reasonableness, applies to consecutive sentencing determinations." State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of seven categories enumerated in code section 40-35-115(b). Those categories include:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;

(3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

T.C.A. § 40-35-115(b). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." Id. § 40-35-102(1); see State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2); see Imfeld, 70 S.W.3d at 708.

Here, the trial court imposed consecutive sentencing after finding that the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. See T.C.A. § 40-35-115(b)(4). In reaching this decision, the court made the following findings:

[T]hen we get to the question of whether these are consecutive or concurrent. There is a presumption in favor of concurrent sentencing, but in this case when we have failure to appear[,] . . . the failure to appear sentences would be consecutive . . . to the underlying felony for which he didn't show up, which is this.

. . . .

-11-

So our question then is, is whether or not the two failure to appear sentences would be consecutive to one another. Because we know they're consecutive, each one is consecutive to the underlying felony[.]

So we look to whether or not there are one of seven factors present, and sufficient to overcome the presumption in favor of concurrent sentencing.

And No. 1 is not present, certainly the professional criminal. And No. 2 is not present: The extensive criminal record.

The committed while on probation doesn't apply. The abuse of children doesn't apply. Criminal intent doesn't apply.

So the question is, is he dangerously mentally abnormal, which is the third one at least on my list. Or is he dangerous and has little regard for human life, where there's no hesitation, where the risk of life is great. And I do find that No. 4 is present here. So I make the two E felonies consecutive to one another.

Not only was there an aggravated assault, there was an aggravated assault on someone who is extremely vulnerable; unable to fight back; unable to even raise her hands to fight back. So, I'm going to make each of these consecutive to the others.

When imposing consecutive sentencing pursuant to the dangerous offender classification, two additional findings must be made by the trial court:

"Proof that an offender's behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high, is proof that the offender is a dangerous offender, but it may not be sufficient to sustain consecutive sentences. Every offender convicted of two or more dangerous crimes is not a dangerous offender subject to consecutive sentences; <u>consequently, the provisions of [s]ection 40-35-115 cannot be read in isolation from the other provisions of the Act. The proof must also establish that the terms imposed are reasonably related to the severity of the offenses committed and are necessary in order to protect the public from further criminal acts by the offender.</u> In addition, the Sentencing Reform Act [of 1989] requires the application of the sentencing principles set forth in the Act applicable in all cases. The Act

-12-

requires a principled justification for every sentence, including, of course, consecutive sentences."

Pollard, 432 S.W.3d at 863 (quoting State v. Wilkerson, 905 S.W.2d 933, 938 (Tenn. 1995)). Therefore, when imposing consecutive sentences pursuant to the dangerous offender classification, the trial court must find that the proof establishes that the aggregate sentence is "reasonably related to the severity of the offenses" and "necessary in order to protect the public from further criminal acts." Id. (quoting Wilkerson, 905 S.W.2d at 938). Unlike the other six subsections, the trial court must make additional findings for the dangerous offender classification because it is "the most subjective and hardest to apply." State v. Lane, 3 S.W.3d 456, 461 (Tenn. 1999).

Upon review of the record, we conclude that the trial court failed to expressly articulate the requisite components of the dangerous offender classification as outlined in Wilkerson. Although the trial court found that the aggregate sentence was "reasonably related to the severity of the offenses," it failed to determine based on the proof whether consecutive sentencing of the failure to appear convictions to one another was "necessary in order to protect the public from further criminal acts." See Wilkerson, 905 S.W.2d at 938. As previously noted, both components must be present to justify consecutive sentencing under the dangerous offender classification. Thus, as determined by the Tennessee Supreme Court in Pollard, this Court has two options:

> Where, as here, the trial court fails to provide adequate reasons on the record for imposing consecutive sentences, the appellate court should neither presume that the consecutive sentences are reasonable nor defer to the trial court's exercise of its discretionary authority. Faced with this situation, the appellate court has two options: (1) conduct a de novo review to determine whether there is an adequate basis for imposing consecutive sentences; or (2) remand for the trial court to consider the requisite factors in determining whether to impose consecutive sentences. See Bise, 380 S.W.3d at 705 & n.41.

Pollard, 432 S.W.3d at 863-64. The Pollard court concluded that "because the considerations required under Wilkerson involve a fact-intensive inquiry . . . the better course is to remand to the trial court for consideration of the Wilkerson requirements in determining the propriety of consecutive sentencing." Id. at 864. In light of the court's decision in Pollard, we remand this matter to the trial court for a new sentencing hearing to consider whether the evidence in this case establishes the Wilkerson factors.

-13-

## CONCLUSION

For the aforementioned reasons, we remand the cause to the trial court for a new sentencing hearing. This hearing is limited to consideration of the factors outlined in State v. Wilkerson, 905 S.W.2d 933 (Tenn. 1995). In all other respects, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE